STATE of Oklahoma ex rel. DEPART-
MENT OF TRANSPORTATION of the
State of Oklahoma, Appellant,

v.

Mrs. C. V. PILE, Appellee.

No. 51541.

Supreme Court of Oklahoma.

Nov. 13, 1979.

Preston L. Pulliam, Oklahoma City, for appellant.

Bradford S. Baker, Farmer, Woolsey, Tips & Gibson, Tulsa, for appellee.

Philip K. Jones, Norman L. Sisson, Baton Rouge, La., and Jonathan C. Harris, Baton Rouge, La., of counsel, for Department of Transportation and Development, State of Louisiana, amicus curiae.

HARGRAVE, Justice.

Before this court in this proceeding is an appeal brought by the State of Oklahoma from a judgment of the District Court of Harper County sustaining a demurrer to the state's petition for an injunction to compel the removal of a billboard from the vicinity of S21, T25N, R24W in Harper County under the authority of 69 O.S.1971, §§ 1271–1275. The state's petition in error raises a single question and that is: Did the trial court err as a matter of law in holding the relief requested by the state's petition violated the first amendment to the Constitution of the United States?

In the petition filed by the State ex rel. Department of Highways and subsequently held vulnerable to a demurrer for failure to state facts sufficient to constitute a cause of action, the state alleged that it is charged with the duty of enforcing the size, number, lighting and type of outdoor advertising signs on Federal-aid Primary Highway Systems under the authority of 69 O.S. 1971 §§ 1271–1285. Further, the state alleged that the defendant, Mrs. C. V. Pile, owns and is displaying, as an individual, a sign located within 660 feet from the nearest edge of Federal Highway U.S. 270 which was erected after March 28, 1972, constituting a public nuisance. Physically attached to the petition is a copy of the letter the petition alleges was mailed to Mrs. Pile more than 90 days prior to the filing of the action. This letter states that on its face the sign conveyed the following message:·

### "GET US OUT OF THE UNITED NATIONS"

The defendant demurred, stating specifically that . . . "the statutory authority on which plaintiff's cause is based does not apply to defendant's noncommercial sign . . .".

As a primary indicia of the coverage of the Act, the definition of outdoor advertising device is found in 69 O.S.1971 § 1273(a), and provides:

(a) "Sign", "outdoor advertising" or "outdoor advertising device" shall mean any outdoor sign, display, device, notice, figure, painting, drawing, message, placard, poster, billboard or other thing which is designed, intended, or used to advertise or inform, but shall not include surface markers showing the location or route of underground utility facilities or pipelines or public telephone coin stations installed for emergency use.

The definition given in Webster's Third New International Dictionary contains three primary senses for the word "advertising":

1. The action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public, esp. by means of printed or broadcast paid announcements.

2. Advertising [a magazine containing a great deal of advertisements] [the advertising pages of the Sunday paper].

3. The business or profession of designing and preparing advertisements for publication or broadcast . . .

The definitions clearly refer to what is generally thought of as commercial advertising.

This State's Constitution also contains a guarantee of the continued freedom of the right to speak and publish upon issues of the day in Article 2 § 22 of the Constitution of the State of Oklahoma, wherein it is provided:

Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right, and no law shall be passed to restrain or abridge the liberty of speech or the press. . . .

■ Mindful of the federal guarantee to the people of this right to speak and to be heard[1] in addition to the guarantee of that right in the preceding excerpt from this State's Constitution, the trial court determined implicitly by his sustention of the defendant's demurrer that if the act did restrict the pure speech activity plead in the state's petition, the act would be of doubtful constitutional validity. The court's ruling additionally presupposes that the act, 69 O.S.1971 §§ 1271, et seq., is susceptible to a fair construction that pure speech activity is not restricted by the act. As was the trial court's duty in construing this statute and its restriction on speech activity, that

---

1. Protection afforded by the 1st Amendment to the United States Constitution extends to the recipient's right to acquire information as well as the speaker's right to disseminate that information. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Lamont v. Postmaster General*, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965).

lower court construed the act narrowly to avoid serious doubt as to its constitutionality, *U. S. v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), and held from the bench:

> "It is this Court's opinion, gentlemen, if this statute were to be applied to this particular defendant and this particular sign that it would be an infringement upon the first amendment rights of the defendant to express herself on political issues."

The state has fashioned what amounts to a prohibition against written communication upon the rural byways of Oklahoma. The prohibition runs to all federally funded and interstate highways in rural areas. It cannot be said this restriction is not a substantial and material limitation on the physical ability of the citizens of this state to effectively communicate their sentiments to one another. The ban includes all the more heavily traveled roadways in rural areas of the state except the smaller and less traveled state highways and secondary, or section-line roads in the state. A large percentage of the mileage of this last class of roadways is dirt or gravel surfaced—not paved. Against this intrusion upon the ability of both the communicator and his audience to engage in a silent dialogue on the issues of the day, the State of Oklahoma refers us to its police power. Pursuant to the police power the state tells us it has the duty to protect the aesthetic integrity of Oklahoma's admittedly scenic countryside for the benefit of all. The state also justifies this abridgment of the ability to communicate on the theory that the presence of such billboards as that before the court constitutes a distraction to the motoring public, thus constituting a threat to public safety. Does the state's police power extend far enough to restrict the individual's freedom of speech under these circumstances? The determination of that question begins with the observation that the usual presumption favoring the constitutional validity of legislation generally is not operative against statutory restriction of the preeminent freedoms secured by the first amendment. That priori-

ty gives these liberties a sanctity and a sanction not permitting dubious intrusions. It has been stated by the Federal Supreme Court therefore that any system of prior restraints of expression comes to the bar for judicial review bearing a heavy presumption against its Constitutional validity. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *Lovell v. City of Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Schneider v. State of New Jersey*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Cantwell v. State of Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Niemotko v. State of Maryland*, 340 U.S. 268, 71 S.Ct. 325, 328, 95 L.Ed. 267, 280 (1951); *Kunz v. People of State of New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); *Staub v. City of Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958). Accordingly, any attempt to restrict these first amendment liberties must be justified by a clear public interest clearly and presently threatened by the activity sought to be regulated. The freedoms of speech and of press, of assembly and worship, may only be encroached upon after it is shown the restriction is necessary to prevent a grave and immediate danger to interests the state may lawfully protect. *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). These rights rest on firmer ground than, for instance, due process, which mandates a rational connection between the remedy provided legislatively and the evil to be forestalled. Accordingly, whatever occasion would restrain orderly discussion and persuasion, at an appropriate time and place, must have clear support in public danger. Only the gravest of abuses engendering paramount interests give occasion for limiting legislation. It is therefore our tradition to allow the widest latitude for discussion and the narrowest range for its restriction. *Thomas v. Collins*, 323 U.S. 516, at 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945). This court has stated that in order for prior restraints to withstand constitutional attack

they must be narrowly drafted so as to suppress only that speech presenting a clear and present danger of serious and substantial evil. *Hennessey v. Independent School District No. 4, Lincoln County,* Okl., 552 P.2d 1141 (1976).

■ As previously noted herein, reasonable time, place and manner restrictions are allowed under the police power in proper circumstances. Regulation of the time, place and manner of public forum utilization is compatible with the recognition of public forum rights, but may not be drawn so as to be in fact a prohibition upon use of that forum. *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). The existence of a public forum right clearly extends to streets and parks. *Schneider v. State of New Jersey, supra. Hague v. C.I.O., supra,* 307 U.S. at p. 515, 59 S.Ct. at p. 964, contains the following passage concerning the use of streets as a public forum:

. . . Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens.

■ After quoting the above passage with approval, the U.S. Supreme Court, in *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), stated that the right to the use of a public place for expressive activity may be restricted only for weighty reasons. Clearly the content of the message does not create the power to restrict the activity[2] but it is equally clear that reasonable time, place and manner restrictions may be necessary to further significant governmental interests. The nature of the place and the pattern of its normal activities dictate the kind of regulations of time, place and manner that are reasonable. *Grayned, supra.* As the mode of expression moves from print to action the scope of permissible state regulation significantly increases. The state may at times proscribe expression when it consists of conduct or action directed at the accomplishment of an end the state has validly declared illegal. *California v. La-Rue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). But pure speech such as leafleteering and silent protest seem protected on all public forums. *Tinker v. Des Moines,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Talley v. California,* 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960); *Lovell v. Griffin,* supra. Additionally, as implied by the statement that pure speech is protected in *all* public forums, it is true that one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place, *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974); *Schneider v. State of New Jersey, supra,* for as Justice Black stated in his concurring opinion in *NLRB v. Fruit Packers Local 760,* 377 U.S. 58, at p. 80, 84 S.Ct. 1063, at p. 1075, 12 L.Ed.2d 129 (1964): "First Amendment freedoms can no more validly be taken away by degrees than by one fell swoop."

■ From the above dialogue we have concluded that the highway, as the equivalent in this day of the streets of a former time, is an appropriate public forum for the dissemination of speech activity. The prohibition attempted in this act affects a substantial portion of the available forum, to wit: all rural locales. Are the restrictions therein contained reasonable as to time, place and manner? The scope of the permissible regulation is narrow in this instance inasmuch as we are dealing with written communication, not actions or symbolic speech as noted above. See also *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

■ The justification urged by the state for the sweeping restriction of billboards from non-zoned or rural areas deals with safety and aesthetics. The state urges us

2. See *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

under the authority of *Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), to recognize the public utility of this legislation as a valid exercise of the police power designed to promote the general welfare of the state and its citizens by preserving the natural scenic beauty of the state and encouraging tourism, etc. That the State, under the police power, may "determine the community should be beautiful as well as healthy" is not denied as a general statement. It is, however, inappropriate, and under the case law discussed herein impermissible, to interfere with a first amendment right to openly discuss the issues of the day to accomplish that end. The power of the state to infringe upon these first amendment rights on behalf of the physical beauty of the community has been denied heretofore. In *Lovell v. Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938), it was stated that the state may not deny the use of a public forum on the basis of a regulation designed to prohibit littering the streets as a result of the distribution of handbills. Such a decision is mandated by the fact that aesthetic standards are indeterminate, incapable of concrete definition, fluid and everchanging, while the freedoms guaranteed by the first amendment are as absolute as the nature of a republic will allow. As a paramount consideration in this form of government, freedom of speech cannot be made subservient to any definition of beauty or aesthetics.

The second consideration the state raises in support of the challenged legislation is the health and safety of the motoring public. It cannot be denied that furtherance of health and safety of its citizens is a valid basis for the exercise of a state's police power. As noted above in *Thomas v. Collins, supra,* this attempt to restrict this liberty must be justified by a clear public interest which is taken here to be the physical safety of our citizens. This public interest must be threatened by the proscribed speech not doubtfully or remotely, but must be imperiled by a clear and present danger requiring such intrusion. It is the duty of this court to determine whether or not the legislative action bears a reasonable relationship to the achievement of this governmental purpose. *Bates v. City of Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). For reasons given hereafter we determine that it does not.[3] First, the statute does not restrict itself to the removal of billboards which impede the clear view of the roadway but applies to all signs in rural areas, except on-premises business signs. Second, not even all signs in rural locales are prohibited as would be necessary if billboards in general constituted an immediate threat or distraction. Thirdly, on-premises business signs are permitted in both rural and urban settings further limiting the effectiveness of the statute if it is actually designed to reduce driver distractions. Lastly, the statute reduces billboards in quiet rural settings to the point of extinction and at the same time leaves the number of billboards and their type largely unregulated in the highly congested metropolitan areas of the state.

Finally, the considerations of public safety and beauty as proffered by the state as a basis for prohibiting the speech signified by the defendant's billboard are mutually inconsistent. The argument is made that our

---

3. We have examined the authority cited by the appellant in its amended brief, *State of Washington v. Lotze,* 92 Wash.2d 52, 593 P.2d 811 (1979), and find it not to be persuasive, although we accede to the statement made therein that statutory restraints upon the freedoms guaranteed by the first amendment of the Federal Constitution bear a heavy presumption against their constitutionality. However, we cannot hold the prohibition imposed by our act is an incidental restriction on these freedoms. The act substantially encroaches upon the use of a recognized public forum, the streets. The existence of an alternate forum is not material to the question. Additionally, the notion that aesthetic principles, however they are defined, constitute a compelling state interest which would justify a restriction on freedoms constitutionally guaranteed is rejected. Lastly, the manner and place restrictions imposed are not narrowly drawn to restrict only those written communications posing a clear and present danger to the motorist, and in fact are drawn to allow such activity in the cities, not in the rural areas, a result squarely contrary to that dictated by the consideration of the reduction of traffic distractions at the more dangerous points of our highway system.

residents are entitled to look at the beauty of the countryside, untrammeled by the blight of billboards, in the face of the statement that billboards can be banned because they constitute a distraction to the drivers of automobiles. Using this reasoning, one could argue the countryside should be covered with billboards to reduce the temptation to avert one's eyes from the road.

 It can only be concluded that the roadways constitute a public forum utilized customarily for communication which may be restricted only narrowly to avert a clear and present danger. The manner and place · restrictions imposed upon this speech activity have little if any relationship to the legitimate governmental purpose to be served by the legislation. If the statutory definition of sign, outdoor advertising, or outdoor advertising device found in 69 O.S. § 1273(a) including ". . ., or [any] other thing, which is designed, intended or used to advertise or *inform* . . ." was held to cover non-commercial speech, that interpretation would raise, at least, serious doubts as to its constitutionality. The statute is easily susceptible to the interpretation that it does not cover non-commercial speech. This court is bound to accept an interpretation that avoids constitutional doubt as to the validity of the provision. *U. S. v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). The trial court has held the non-commercial speech not to be regulated by this statute, has avoided the spectre of unconstitutionality, and its decision is in all respects AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, SIMMS and OPALA, JJ., concur.

DOOLIN, J., concurs in part, dissents in part.

BARNES, J., dissents.

BARNES, Justice, dissenting:

I respectfully dissent from the majority opinion.

In the case before us, the Department of Transportation, in seeking an injunction against Appellee, has alleged that Appellee is maintaining a billboard within 660 feet of a highway covered by 69 O.S.1971, §§ 1271–1275. The maintenance of Appellee's sign is, as plead, a violation of the 660-foot restriction contained in our statutes. On the basis of this maintenance contrary to law, the State seeks an injunction. The trial court held that such did not state a cause of action, implicitly ruling that to interpret the statute to include Appellee's billboard would be unconstitutional as a deprivation of free speech. The majority, in affirming the trial court's sustaining of the demurrer, has implicitly ruled that the imposition of such a restriction is not justified by the presence of a significant State interest. Yet, it is the sustaining of the demurrer which deprives the Department of Transportation of the opportunity to present evidence showing that the restrictions serve a significant governmental interest, and that the restrictions leave open ample alternative channels for communication of Appellee's message.

In *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346, 363 (1976), the United States Supreme Court, in considering the constitutionality of restrictions upon advertising by pharmacists, stated:

"We have often approved restrictions of that kind [time, place, and manner restrictions] provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in so doing they leave open ample alternative channels for communication of the information." [Bracketed information added.]

The Department of Transportation argues that the restrictions in our statutory scheme are justified by two significant governmental interests, public safety and scenic beauty.

In *Markham Advertising Co. v. State,* 73 Wash.2d 405, 439 P.2d 248 (1968), the Supreme Court of the State of Washington upheld the constitutionality of that State's

billboard control act. At page 255 of that decision, the Court quoted with approval the findings of fact of the trial court, which included the finding that the defendants had introduced sufficient evidence to permit reasonable men to find that a reasonable relationship existed between outdoor advertising and traffic safety. In so ruling, the trial court stated:

"* * * The evidence indicates that (a) outdoor advertising structures along the highways are intended to, and do, cause inattention to the driving task which, in turn, results in increased stopping distances and driver reaction times. Such factors contribute to traffic accidents; . . . (c) advertising signs compete with official highway signs for driver attention, and decrease the effectiveness of cautionary and directional messages essential for the safety of the traveling public; (d) highway billboards, which cause driver inattention, are contrary to the principles of modern interstate highway design, since highways are being built to permit higher speeds and increased traffic loads, thus placing greater demands on motorists' attention and alertness; . . .

"2. Signs located more than 660 feet from the highways are less obtrusive and are less likely to constitute a traffic safety hazard than signs located closer to the right-of-way.

"3. * . * *

"4. Roadside advertising in scenic areas is detrimental to the appearance of these areas and is inconsistent with the purpose for which these areas were established."

In affirming the action of the trial court, the Washington State Supreme Court stated:

"* * * It is, in our opinion, within the reasonable scope of the police power to preserve from destruction the scenic beauties bestowed on the Commonwealth by nature in conjunction with the promotion of safety of travel on the public ways . . . .."

Indeed, the United States Supreme Court has recognized that aesthetic considerations do come within the scope of public welfare, and therefore may form the basis for the exercise of a sovereign's police power. In *Berman v. Parker*, 348 U.S. 26, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27, 38 (1954), the United States Supreme Court stated:

"* * * The concept of the public welfare is broad and inclusive. . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled." [Citations omitted.]

More recently in *State v. Lotze*, 92 Wash.2d 52, 593 P.2d 811, 815 (1979), the Washington Supreme Court again found ample justification for restrictions similar to those before us. In so finding, the Washington Court stated:

"We conclude that RCW 47.42 [the Washington statute being interpreted] as applied to appellants' billboards does not violate their First Amendment rights of free speech. The traffic safety rationale upheld in *Markham Advertising Co. v. State, supra,* and not refuted at trial in these cases is sufficiently compelling to outweigh the minimal restraint on appellants. The statutory scheme represents a reasonable place and manner limitation on speech leaving ample alternative channels of communication for appellants. Appellants' speech is not in any way being controlled as to content; its stricture is narrowly confined to place and manner. The entire panoply of means to communicate their views is open to appellants except for the limited restrictions of RCW 47.42."

In sustaining the demurrer to the petition, the trial court by implication held that the place restrictions imposed by the statutes were not applicable to Appellee. The majority opinion, in affirming this holding, reasoned that the place restrictions could not be interpreted as being applicable to

Appellee, as such a construction would render the statute unconstitutional. The majority's conclusion is based upon the assumption that the place restrictions, if imposed upon the Appellee, could not be justified, as such restrictions could not serve a significant governmental interest, and did not leave ample alternative avenues of communication open to Appellee. Since I believe it is at least possible for such restrictions to be justified, I would not have affirmed the sustaining of the demurrer based upon the assumption that the 660-foot place restriction was incapable of being justified. Accordingly, I must dissent from the majority opinion.

DOOLIN, Justice, specially concurring in part, dissenting in part:

Specific control of highway advertising became the law and policy of this state in 1968, 69 O.S.1971 § 1271 et seq. The state action was in response to acts of the United States Congress specifically 23 U.S.C. § 131 (Federal Act), which under section (a) thereof sets policy and declares that outdoor advertising signs, displays and devices in areas adjacent to the Interstate and the Primary system of roads shall be controlled in order to protect the public investment of such highways to promote the safety and recreational value of public travel and to preserve natural beauty.[1]

The majority opinion affirms the action of the trial court in sustaining the demurrer to state's petition on three grounds: 1) 69 O.S.1971 § 1271 et seq. was never intended to apply to first amendment rights guaranteed by the United States Constitution; 2) § 1271 et seq. abridges first amendment rights if it attempts to regulate freedom of expression; 3) § 1271 et seq. is constitutional except under the facts and circumstances of this case.

The trial court held the state was not entitled to relief upon its position in as much as the relief sought (injunction) "would be an infringement upon the first amendment rights of defendant to express herself on a political issue."

At the risk of oversimplification, the Federal Act among other things created a system of controlled advertising along the Interstate and Primary highway system. It authorized the Secretary to promulgate national standards of compliance. Under both State Act and the Federal Act, the sign that we deal with in this case stands in a prohibited status within 660 feet of the right of way of U.S. 270 running through Harper County, Oklahoma. U.S. 270 is a part of the Primary road system.

After the passage of the Federal Act, the various states including Oklahoma, enacted Highway Advertising Control Acts.[2]

I have no quarrel with the majority's opinion academically when it differentiates between commercial advertising and the political "advertising" or opinion under the first amendment of the United States Constitution and Art. II, § 22 of the Oklahoma Constitution. Neither do I balk in principle at the majority's requirements and conclusions as to a clear and present danger being necessary before first amendment rights may be abridged or limited. Likewise, I find no objection to the majority's conclusion as to streets and the right to use same as a place of assembly as guaranteed by the first amendment.

There are at least two vices or misconceptions as to the conclusion of the majority.

First, the majority overlooks those cases that hold first amendment rights of assembly and speech may be limited by a time, place and manner limitation albeit that such cases usually apply to commercial advertising. Such limitations might apply to the defendant in this case, for she is most free to opine or advocate beyond the 660 foot limit of the acts. Secondly, the majori-

---

1. 69 O.S.1971 § 1271 et seq.; the statutory history of 23 U.S.C. § 131 may be found following 23 U.S.C.A. § 131 and 23 U.S.C.S. 131. As to the regulatory history, see 23 C.F.R., Highways, as amended.

2. Oklahoma Highway Advertising Control Act of 1965 has been at least twice amended, 69 O.S.Supp. 1972 § 1271 and 69 O.S.Supp. 1978 § 1272 et seq.

ty affirms the trial court's denial that a state could ever, under the police power, state a cause of action under the limitation of time, place and manner.[3]

Certainly a citizen may use the streets, parks and his own premises adjacent thereto as a means of communicating his thoughts and to assemble peaceably. But, I suggest his right is not absolute; it must be exercised in subordination to the general comfort and convenience of all. His rights must not, in the guise of regulation, be totally abridged or subverted.[4]

A valid exercise of the police power in regulating public streets as to loud and raucous noise does not deny freedom of speech but regulates it as to place, time and manner.[5]

Both the Federal Act and State Act are limitations on place and manner of communication or advertising within the "time, place and manner of speech" regulation discussed with approval by the United States Supreme Court most recently in *Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85, 93, 97 S.Ct. 1614, 52 L.Ed.2d 155, 162 (1977); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976).

Such limitations on opinion or private expression exist as to loud and raucous noises,[6] class room discussions which would disrupt discipline;[7] see also the filthy word case, *Federal Communications Commission*

*v. Pacifica Foundation*, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978). *Curtis Publishing Company v. Butts* and *Walker v. Associated Press*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 points up the limitation that libel actions place on First Amendment rights:

"The fact that dissemination of information and opinion on questions of public concern is ordinarily a legitimate, protected and indeed cherished activity does not mean, however, that one may in all respects carry on that activity exempt from sanctions designed to safeguard the legitimate interests of others."

. . . . .

"The guarantees of freedom of speech and press were not designed to prevent 'the censorship of the press merely, but any action of the government by means of which it might prevent such free and general discussion of public [8] matters as seems absolutely essential * * *.'"

The Acts attempt to place a limitation on the First Amendment as to place and manner based upon the police power. Both Acts recite or imply that the limitation is imposed because of the compelling interest of the State in preserving aesthetic qualities of roadways and the promotion of safety of motorists and the traveling public.[9]

In my opinion the State has pled and stated a cause of action for the reasons stated aforesaid, and the cause should be remanded for trial.

---

**3.** This case was decided on a demurrer to petition. We are therefore limited to the pleadings and a transcript of the court's oral findings. From the latter we know the state refused to amend its petition and elected to stand on it. Our examination of these limited sources might entitle us to remand under the time honored theory that a demurrer admits all facts pled and all logical conclusions to be drawn therefrom. Thus this court might find an abuse of discretion on the part of the trial court and could direct a hearing. I discard this action, for neither party advances such an argument and sooner or later, this court would be faced with the merits of a free speech issue.

**4.** *Hague v. C.I.O.*, 307 U.S. 496, 516, 59 S.Ct. 954, 964, 84 L.Ed. 1423, 1437 (1939).

**5.** *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). Various hypothetical cases and situations may be assumed which would illustrate this point.

**6.** See footnote 5, supra.

**7.** *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Cf. *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978).

**8.** Per Mr. Justice Harlan with three Justices concurring and the Chief Justice concurring in result.

**9.** *State v. Lotze*, 92 Wash.2d 52, 593 P.2d 811, 814 (1979). Notice of Appeal to United States Supreme Court filed August 30, 1979.

I do not indicate nor suggest the State is entitled to judgment on its pleadings. Its burden remains to show a clear and present danger and looms large. The existence of the Acts heretofore described is no evidence in itself of a valid exercise of police power; it remains suspect in the face of the Constitutions.

I would remand, for an evidentiary hearing would allow us to test or weigh evidence of the existence of a compelling public interest under the police power.