Dear Director Ashwood:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does the Governor or any local jurisdictional body have the authority to order a mandatory evacuation during emergencies and/or natural disasters?
 2. Does the Governor or any local jurisdictional body have the authority to enforce a mandatory evacuation necessary during emergencies and/or disasters?
 3. If authorized to order a mandatory evacuation, what, if any, legal liabilities would the Governor or local jurisdiction be subject to?
 POLICE POWER
The subject matter of your request requires an analysis of the most central of all powers possessed by a state government — the police power. The "[p]olice power is an attribute of state sovereignty[,]" and is "an inherent power of the state legislature that extends to the whole system of internal regulation by which the state preserves public order," welfare and peace. Jacobs Ranch, L.L.C. v. Smith, 148 P.3d 842, 849
(Okla. 2006). "The promotion of safety of persons and property is unquestionably at the core of the State's police power." Kelley v.Johnson, 425 U.S. 238, 247 (1976). It cannot be doubted that protecting the "safety of its citizens is a valid basis for the exercise of a state's police power." State ex rel. Dep't of Transp. v. Pile,603 P.2d 337, 342 (Okla. 1979). In addition, the power to enforce laws enacted by the State Legislature under its exercise of police power may be delegated to political subdivisions of the state. Teeter v.City of Edmond, 85 P.3d 817, 822 (Okla. 2004);see also Harris v. State, 251 P.2d 799, 802-03 (Okla. 1952) (stating that the Legislature has no power to delegate the power to make laws, but may delegate authority to carry into effect existing laws). Having established the well-recognized power of the State to enact laws under its police power for the welfare and safety of its citizenry and to delegate the power to implement those laws, our analysis now turns to the specific laws of the State of Oklahoma regarding evacuations during emergencies or disasters.
 EVACUATION
The Oklahoma Legislature has enacted three acts which authorize evacuations of the civilian population: the Oklahoma Emergency Management Act of 2003, the Catastrophic Health Emergency Powers Act and the Oklahoma Emergency Response Act. The Oklahoma Emergency Management Act of 2003 creates broad authority for the Governor and political subdivisions to declare emergencies and disasters, and act for the benefit of public safety. See 63 O.S. Supp.2006, §§ 683.1 — 683.24. The Catastrophic Health Emergency Powers Act empowers the Governor and the State Commissioner of Health or local health departments to act in response to a nuclear, biological or chemical attack. See 63 O.S. Supp.2006, §§ 6101 — 6804. The Oklahoma Emergency Response Act allows local law enforcement and fire department officials to take protective actions in the event of extreme emergencies involving the release of dangerous substances. See 27A O.S. 2001, §§ 4-1-101[ 27A-4-1-101] — 4-1-106.
Before analyzing the power of evacuation authorized in these three acts we must first establish the meaning of that term. Each of the three acts uses the term "evacuation"; however, neither the provisions of the acts, the Oklahoma Constitution, other Oklahoma statutes nor published cases provide a definition of that term. In the absence of an express definition of the common words used in a statute, the words must be given their plain and ordinary meaning. 25 O.S. 2001, § 1[25-1]; City of Durant v.Cicio, 50 P.3d 218, 221 (Okla. 2002). Accordingly, we look to the plain and ordinary meaning of the term "evacuation."
The word "evacuation" is a noun that means "the act of emptying." WEBSTER'S NEW INTERNATIONAL DICTIONARY 786 (3d ed. 1993). The word "evacuate" is a verb which means "to remove (a person or thing) from some place in an organized way esp. as a protective measure." Id.[1] The word "remove" is a verb which means to change the location. Id. at 1921. Therefore, the plain and ordinary meaning of the word "evacuation" is to empty by removing or changing the location of a person or thing. In addition, where the statutes that provide for the power of evacuation also provide for the power of enforcement, such evacuations could be made mandatory by the use of the enforcement power.
 THE OKLAHOMA EMERGENCY MANAGEMENT ACT OF 2003
The Oklahoma Emergency Management Act of 2003 ("Emergency Management Act") is a broad delegation of police powers to the Governor and political subdivisions[2] for the purpose of protecting the public in the event of emergencies and disasters. Title 63 O.S. Supp.2006, § 683.2 in pertinent part provides:
 A. Because of the existing and increasing possibility of the occurrence of disasters of unprecedented size and destructiveness resulting from natural and man-made causes, in order to ensure that preparations of this state will adequately deal with such disasters and emergencies, to generally provide for the common defense and to protect the public peace, health, and safety, to preserve the lives and property of the people of this state, and to carry out the objectives of state and national survival and recovery in the event of a disaster or emergency, it is hereby found and declared to be necessary to:
 . . . .
 4. Confer upon the Governor and upon the executive heads or governing bodies of the political subdivisions of the state the emergency powers provided by the Oklahoma Emergency Management Act of 2003[.]
Id. Evacuation is among the emergency powers conferred by the Emergency Management Act.
 "Emergency management" means the preparation for and the coordination of all emergency functions by organized and trained persons, who will extend existent governmental functions and provide other necessary nongovernmental functions, to prevent, minimize and repair injury and damage resulting from natural or man-made disasters developing to such an extent to cause an extreme emergency situation to arise which by declaration of the Governor jeopardizes the welfare of the citizens of this state. These emergency functions include, but are not limited to, fire fighting, law enforcement, medical and health, search and rescue, public works, warnings, communications, hazardous materials and other special response functions, evacuations of persons from affected areas, emergency assistance services, emergency transportation, and other functions related to preparedness, response, recovery and mitigation[.]
Id. § 683.3(1) (emphasis added). Specifically at Section 683.8(7), the Emergency Management Act confers upon the Governor the power to:
 Cooperate with the President of the United States and the heads of the Armed Forces, the Federal Emergency Management Agency, and other appropriate federal officers and agencies, with the officers and agencies of other states in matters pertaining to the emergency management of the state and nation, including the direction and control of:
 a. state emergency management activations and exercises,
 b. warnings for actual or exercise events and the equipment to be used in connection therewith,
 c. the conduct of civilians and the movement of and cessation of movement of pedestrians and vehicular traffic during, prior and subsequent to natural and man-made disasters and emergencies,
 d. public meetings or gatherings, and
 e. the evacuation and reception of the civil population[.]
Id. (emphasis added). In the event of a natural or man-made emergency[3] declared by the Governor or Legislature, the Emergency Management Act provides additional powers to the Governor to "provide for the evacuation of all or part of the population from any stricken or threatened area or areas within this state and to take such steps as are necessary for the receipt and care of such evacuees." Id. § 683.9(3). The power to control the conduct of civilians and control the evacuation and receipt of the civilian population expressly provides authority for the Governor to evacuate an area by ordering the removal of persons and to provide for the care of the evacuees pursuant to the provisions of the Emergency Management Act.[4]
With regard to the authority of political subdivisions, the Emergency Management Act also confers responsibility for evacuation.
 Each local organization for emergency management shall perform emergency management functions within the territorial limits of the political subdivisions within which it is organized, and, in addition, shall conduct such functions outside of such territorial limits as may be required pursuant to this act. Each local emergency management organization shall develop, maintain and revise, as necessary, an emergency operations plan for the jurisdiction. Each plan shall address the emergency management system functions of preparedness, response, recovery and mitigation. Such plan shall be based upon a hazard and risk assessment for the jurisdiction and shall include provisions for evacuation of all or a portion of the jurisdiction based upon such risk in the event any disaster, as defined in Section 683.3 of this title, necessitates the evacuation of its citizens.
63 O.S. Supp.2006, § 683.11(A) (emphasis added) (footnote omitted). Section 683.11(F) further authorizes political subdivisions to declare a local emergency. This authority to declare a local emergency and then evacuate all or a portion of the jurisdictional area of the political subdivision when events require, is clearly a delegation of the state's police power to act for the protection of public safety. Therefore, a political subdivision may evacuate an area within its jurisdiction by ordering a removal of persons pursuant to the Emergency Management Act.
With regard to the enforcement of evacuations ordered under the Emergency Management Act, the Governor and political subdivisions are directed as follows:
 In carrying out the provisions of this act, the Governor and the executive officers or governing bodies of the political subdivisions of the state are directed to utilize the services, equipment, supplies and facilities of existing departments, offices and agencies of the state and of the political subdivisions thereof to the maximum extent practicable, and the officers and personnel of all such departments, offices, and agencies are directed to cooperate with and extend such services and facilities to the Governor and to the emergency management organizations of the state upon request.
63 O.S. Supp.2006, § 683.18 (emphasis added). Accordingly, the Governor and political subdivisions are authorized to use their existing powers of enforcement to carry out an evacuation order. This office previously recognized the Governor's constitutional authority under Article VI, Section 6 of the Oklahoma Constitution to use the state militia to protect the public health of the State in an emergency. See A.G. Opin. 01-44, at 224. In addition, the Emergency Management Act provides for civil and criminal actions against persons who refuse to comply with the order issued by the Oklahoma Department of Emergency Management ("OEM") and authorizes the Department of Public Safety, the Oklahoma State Bureau of Investigation and the Oklahoma Tax Commission to assist in the enforcement of any order of OEM.[5] See 63 O.S. Supp.2006, § 683.23.
With regard to the legal liabilities of the Governor and political subdivisions during an emergency or disaster, the Emergency Management Act provides the following:
 B. Neither the State of Oklahoma nor any political subdivision thereof nor any officer or employee of the State of Oklahoma or of any political subdivision thereof nor volunteer whose services have been accepted and utilized by an officer or employee of the State of Oklahoma or of any political subdivision thereof for carrying out the functions of this act shall be civilly liable for any loss or injury resulting to any person's company, corporation or other legal entity as a result of any decision, determination, order or action of such employee in the performance of assigned duties and responsibilities under this act during a stated emergency unless such loss or injury was caused by the gross negligence, or willfully and unnecessarily or by the wanton act of such state officer or employee or volunteer. Nothing in this act shall be construed to waive the sovereignty or immunity of the State of Oklahoma, or any political subdivision thereof, from being sued.
63 O.S. Supp.2006, § 683.14 (footnote omitted). In addition to this specific limitation on liability, the Oklahoma Governmental Tort Claims Act may also provide protection from liability depending on the particular facts. See 51 O.S. 2001 Supp.2006, §§ 151 — 200.
 THE CATASTROPHIC HEALTH EMERGENCY POWERS ACT
The Catastrophic Health Emergency Act ("Health Emergency Act") authorizes state and local officials to take certain actions for the protection of the public safety and health during emergencies caused by a nuclear, bioterrorism or chemical attack. See 63 O.S. 2001 Supp.2006, §§ 6101 — 6804. The Health Emergency Act specifically authorizes the Oklahoma State Commissioner of Health and local health departments during investigations to "evacuate" any "facility" when there is a reasonable suspicion that such facility may endanger the public health. 63 O.S. Supp.2006, § 6302(B). The Health Emergency Act also provides authority for the Governor to declare a catastrophic health emergency, and while evacuation is not expressly mentioned, it authorizes the Governor to exercise broad powers. Section 6403 in pertinent part provides:
 B. During a state of catastrophic health emergency, the Governor may:
 1. Suspend the provisions of any regulatory statute prescribing procedures for conducting state business, or the orders and rules of any state agency, to the extent that strict compliance with the same would prevent, hinder, or delay necessary action (including emergency purchases) by the public health authority to respond to the catastrophic health emergency, or increase the health threat to the population;
 2. Utilize all available resources of the state government and its political subdivisions, as reasonably necessary to respond to the catastrophic health emergency;
 3. Transfer the direction, personnel, or functions of state departments and agencies in order to perform or facilitate response and recovery programs regarding the catastrophic health emergency;
 4. Mobilize all or any part of the National Guard into service of the state. An order directing the National Guard to report for active duty shall state the purpose for which it is mobilized and the objectives to be accomplished;
 5. Provide aid to and seek aid from other states during the catastrophic health emergency in accordance with any interstate emergency compact made with this state; and
 6. Seek aid from the federal government for the catastrophic health emergency in accordance with federal programs or requirements.
Id. The Health Emergency Act also provides that the Oklahoma State Commissioner of Health and local health departments may request assistance from the Department of Public Safety or local law enforcement, which may in turn request assistance from the National Guard to enforce orders issued pursuant to the Health Emergency Act. Id. § 6404; see also id. § 6302(C) (providing for immediate enforcement of certain orders by the Department of Public Safety or local law enforcement); id. § 6801 (providing for enforcement through fines and penalties). Therefore, under the Health Emergency Act, removal of persons to another location may be ordered by the State Health Department and local health departments during an investigation, and be enforced by the Department of Public Safety, local law enforcement or the National Guard. In addition, the Governor has broad powers to use all available resources of the State and political subdivisions, including the National Guard, to respond to a catastrophic health emergency.[6]
 THE OKLAHOMA EMERGENCY RESPONSE ACT
The Oklahoma Emergency Response Act ("Response Act") provides authority to local law enforcement, fire protection and the Oklahoma Highway Patrol to take protective actions during extreme emergencies involving the release of dangerous substances.
 "Protective actions" are those steps deemed necessary by first responders to an extreme emergency to preserve the health and safety of the emergency responders, the public and the protection of the environment and property during an incident involving the release of a dangerous substance. Protective actions include but are not limited to area isolation, evacuation, dilution, cooling, encapsulation, chemical treatment and diking[.]
27A O.S. 2001, § 4-1-102[27A-4-1-102](7) (emphasis added). "First responder" is defined to mean "the first person to arrive at the scene of an incident involving the release of a dangerous substance who has the authority by virtue of that person's position as a local law enforcement officer, peace officer, fire protection officer or Oklahoma Highway Patrol Officer or other law enforcement officer[.]" Id. § 4-1-102(8). Therefore, during an extreme emergency involving the release of a dangerous substance, first responders may evacuate an area by ordering the removal of persons to another location. While the Response Act does not specifically address enforcement of such orders, law enforcement officers would have the enforcement authority given them by applicable law. See 11 O.S. 2001 Supp.2006, §§ 34-101 — 34-106 (municipal police officers); 19 O.S. 2001, § 516[19-516] (sheriffs); 21 O.S. 2001, § 99[21-99] (peace officers); 47 O.S. Supp.2006, § 2-117 (Department of Public Safety).[7]
 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Governor and certain political subdivisions may evacuate an area by ordering the removal of persons to another location during emergencies pursuant to the provisions of the Oklahoma Emergency Management Act of 2003, 63 O.S. Supp.2006, §§ 683.1 — 683.24; the Catastrophic Health Emergency Powers Act, 63 O.S. Supp.2006, §§ 6101 — 6804; and the Emergency Response Act, 27A O.S. 2001, §§ 4-1-101[27A-4-1-101] — 4-1-106.
 2. The Governor and certain political subdivisions have the authority to enforce evacuation orders pursuant to the provisions of the Oklahoma Emergency Management Act of 2003, 63 O.S. Supp.2006, §§ 683.1 — 683.24; the Catastrophic Health Emergency Powers Act, 63 O.S. Supp.2006, §§ 6101 — 6804; and the Emergency Response Act, 27A O.S. 2001, §§ 4-1-101[27A-4-1-101] — 4-1-106.
 3. The Governor and officials of political subdivisions ordering evacuations during emergencies would be protected by the general immunity provisions of the Oklahoma Governmental Tort Claims Act, 51 O.S. 2001 Supp.2006, §§ 151 — 200, and are further protected from civil liability for any loss or injury as specifically provided by 63 O.S. Supp.2006, § 683.14 of the Oklahoma Emergency Management Act of 2003.
[1] The word's usage in the English language dates to the 15th century and is derived from the Latin word evacuare, "to empty." THE BARNHART DICTIONARY OF ETYMOLOGY 347 (1988).
[2] The Emergency Management Act defines political subdivision as follows: "`Political subdivision' shall mean any county, city, town or municipal corporation of the State of Oklahoma represented by an elected governing body." 63 O.S. Supp.2006, § 683.3(9).
[3] The Emergency Management Act provides definitions for "Emergency," "Man-made disaster" and "Natural disaster" rather than man-made or natural "emergencies." See 63 O.S. Supp.2006, § 683.3.
[4] This office has previously recognized the broad authority possessed by the Governor under this provision of the Emergency Management Act. See A.G. Opin. 01-44, at 222-24.
[5] As the Emergency Management Act gives the Governor "general direction and control of [OEM]" during emergencies that exceed local capability, the provisions pertaining to the enforcement of OEM orders would apply to the evacuation orders issued by the Governor acting through OEM. 63 O.S. Supp.2006, § 683.8(A).
[6] There is no provision in the Catastrophic Health Emergency Powers Act addressing the liability of the Governor or local jurisdiction. With regard to the legal liability of the State and political subdivisions in general, see the Oklahoma Governmental Tort Claims Act. 51 O.S. 2001 Supp.2006, §§ 151 — 200.
[7] There is no provision in the Emergency Response Act addressing the liability of the Governor or local jurisdiction. With regard to the legal liability of the State and political subdivisions in general, see the Oklahoma Governmental Tort Claims Act. 51 O.S. 2001 Supp.2006, §§ 151 — 200.