[Civ. No. 41486. First Dist., Div. Four. Apr. 4, 1978.]

S. OWEN SIEGEL, Plaintiff and Appellant, v.
CITY OF OAKLAND, Defendant and Respondent.

## COUNSEL

Wald & Freedman, Darlene Marie Azevedo and Michael E. Wald for Plaintiff and Appellant.

David A. Self, City Attorney, and Michael W. Stamp for Defendant and Respondent.

Daniel J. Curtin, Jr., City Attorney (Walnut Creek), and John R. Shaw, Assistant City Attorney, as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**RATTIGAN, Acting P. J.**—Respondent City of Oakland (the City) has installed and uses automobile parking meters on its public streets. In this action brought against it by appellant S. Owen Siegel, he seeks certain relief based upon his contention that the meters are being maintained in violation of law. He appeals from a judgment of dismissal entered upon an order sustaining the City's general demurrer to his complaint without leave to amend.

By reason of the procedural sequence described, the only question on the appeal is whether the complaint states a cause of action. (*Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357].) In assessing its sufficiency against the general demurrer, we must treat the demurrer as having admitted "all material facts . . . properly pleaded" in the complaint but not "contentions, deductions or conclusions of fact or law alleged therein." (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)

The complaint purports to state a cause of action against the City in each of two counts. The counts are identical except for allegations supporting the specific relief sought in each as described below. The other allegations of each count may be summarized and quoted as follows:

The City owns and operates parking meters "for motor vehicles parked" on its public streets. The insertion of a coin into one of the meters activates a "timing device" by which "the party seeking to park his motor vehicle" at that place "is allotted a certain amount of parking time for his motor vehicle depending upon the denomination of the coin inserted and the maximum time allotted to any particular parking meter." The City issues citations to persons who overpark their allotted times, imposes fines upon them, and issues "warrants for the arrests and cause for imprisonment" of persons who do not pay their fines.

At all pertinent times, the parking meters were "*used* by . . . the City for *commercial purposes*[,] to wit, to generate revenues." (Italics added.) The City operates the meters "in violation of California Business and Professions Code section 12210 and Title 4, California Administrative Code section 3000 et seq. in that said code sections imposed upon . . . *the City* a mandatory duty to inspect and test for accuracy . . . each parking meter . . . *on an annual basis.*"[1] (Italics added.)

On a specified date, appellant parked his automobile at one of the meters and "inserted monies" in it, thereby "activating the timing mechanism in said parking meter." "[A]gents and employees" of the City thereafter issued him a citation for overparking in excess of the time which had been "allowed" him "by reason of the activation of the timing device in the parking meter by the insertion of a coin." He "has not paid said parking meter citation and refuses to do so because . . . the City is operating said parking meters in violation of law."

In his second count, appellant alleged the existence of an "actual controversy" between the parties as to whether the City's parking meters were being operated in violation of law as alleged, and his entitlement to a declaratory judgment to that effect.[2]

---

[1]As will appear, the allegations relative to the City's use of the parking meters "for commercial purposes," and its alleged conduct and "duty" as affected by a specific statute and regulations, present questions of law for determination on the appeal. As made, they therefore state "contentions . . . or conclusions of fact or law" which the City did not admit by its demurrer. (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695 at p. 713.)

[2]In his first count, appellant seeks to enjoin the City's "enforcement of the alleged parking meter violations" upon the stated grounds that in its course he will incur "great and irreparable injury" in that he will be "subjected to criminal prosecution by . . . the

 The statute pleaded in the complaint (Bus. & Prof. Code, § 12210) appears in the weights and measures law (*id.,* div. 5, commencing with § 12001), pursuant to which the regulations pleaded were adopted. (Cal. Admin. Code, tit. 4, commencing with § 3000.)[3] Division 5 generally regulates the use, possession, sale, and maintenance of "any weight, measure, balance or weighing or *measuring instrument or apparatus.*" (§ 12014 [italics added].) The regulations require (among other things, as will appear) that a designated public official make periodic tests of "timing devices" used in connection with certain "measuring instruments." The contentions advanced in appellant's complaint, and the bases of any cause of action stated for declaratory relief stated in it (see fn. 2, *ante*), are (1) that the City is generally required to comply with division 5; (2) that its parking meters are "measuring instruments" within the meaning of the division; and (3), more specifically, that its maintenance of the meters, without periodic testing of their "timing devices" pursuant to the regulations, is in violation of law.

By reason of uncoordinated amendments adopted piecemeal over the years, division 5 has been reduced to an utterly disorganized context of provisions which repeat, overlap, vary in nomenclature, and appear in some instances to conflict with one another. Some of these problems are reflected in the regulations. Appellant's contentions nevertheless require examination of both (statutes and regulations alike) at some length. We commence with the following definitions, which appear in the forepart of division 5:

The term "Director" means the State Director of Agriculture. (§ 12003.) The "State Sealer" is the chief of the division of the Department

City and may be caused to be incarcerated by . . . the City." Obviously, the events portended in these allegations may occur only by reason of his violation of an applicable ordinance of the City. He pleaded no ordinance, neither party asked the trial court to take judicial notice of one, and no such request has been made of this court. In the absence of an identifiable ordinance supporting them, the quoted allegations are also "contentions . . . or conclusions of fact or law" which the City has not admitted by its demurrer (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695 at p. 713), and which will not sustain a cause of action for injunctive relief under the first count. The question is therefore whether appellant states a cause of action for declaratory relief, the pro forma elements of which appear in the second count.

[3]We hereinafter refer to the weights and measures law as "division 5," or "the division," only. The unqualified term "section" (or §) refers to the indicated provision of the Business and Professions Code appearing in division 5. "CAC" refers to the regulations as they appear in title 4 of the California Administrative Code (ch. 8, subch. 4, commencing with CAC § 3000).

of Agriculture which is charged with the enforcement of division 5. (§ 12004. See §§ 12002, 12012.) A "county sealer" is "any sealer appointed by a county" (§ 12006) pursuant to section 12200 et seq. The unqualified term "sealer" includes the State Sealer and all county sealers. (§ 12008.) " 'Person' includes any *person, firm, corporation, or association.*" (§ 12011 [italics added].)

Various provisions of the division proscribe specified conduct by a "person" and define it as unlawful. (See, e.g., §§ 12016, 12018, 12020-12024.7, 12025, 12026, 12107, 12107.5, 12508, 12510.) One of these which is pertinent here, and others which use the term "person" in different contexts, provide (all italics added):

"12107. The director, by regulation, may establish tolerances and specifications for *commercial* weighing and *measuring apparatus* for use in the state . . . . [¶] It shall be unlawful for any *person* to violate any of the rules, regulations, tolerances, specifications or standards issued under the provisions of this section."

"12209.5. Each [county] sealer may, when so directed by the board of supervisors, issue and cause to be distributed to such *persons* as he may deem proper illustrative material or statements best adapted to insure the correct use of weights and measures and weighing and *measuring devices* . . . ."

"12210. (a) Each sealer shall, within his county, inspect, try and test all . . . instruments or *mechanical devices* for . . . measurements . . . used by any proprietor, agent, lessee or employee in proving the . . . measurement of quantities, [or] things, . . . purchased or offered or submitted by such *person* or *persons* for sale, hire or reward and ascertain if the same are correct. [¶] (b) Each sealer shall, when so directed by the board of supervisors of his county, and *only upon the written request of any person,* firm or corporation, calibrate, test, .. . . and certify to the accuracy of, *noncommercial . . . measuring devices* . . . ."

"12501.1. Every *person* who uses, or intends to use, any weight or measure, or weighing or *measuring instrument for commercial purposes* shall, before using the same, cause them to be sealed by a sealer . . . ."

The first question is whether the City is a "person," for purposes of any of the provisions just quoted, although neither it nor any other governmental entity is expressly defined as one in section 12011 (quoted

above). ■ There is a rule which excludes governmental agencies from the operation of general statutory provisions which do not expressly include them, but it applies "only if their inclusion would result in an infringement upon sovereign governmental powers. 'Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only.' [Citations.] Pursuant to this principle, governmental agencies have been held subject to legislation which by its terms applies simply to any 'person.' [Citations.]" (*City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 276-277 [123 Cal.Rptr. 1, 537 P.2d 1250].)

■ A municipality maintains parking meters for the purpose of controlling vehicular traffic, which is "a matter of statewide concern . . . [and] . . . not a 'municipal affair' in the sense of giving a municipality (whether holding a constitutional charter or not) control thereof in derogation of the power of the state." (*Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558, 561-562 [11 Cal.Rptr. 340]; *Bragg* v. *City of Auburn* (1967) 253 Cal.App.2d 50, 52-53 [61 Cal.Rptr. 284].) The City may therefore not be heard to contend that state regulation of its parking meters would infringe upon its "sovereign powers." It may be deemed a "person," for purposes of division 5, if legislative intent to that effect may be found in the statutory language. (*City of Los Angeles* v. *City of San Fernando, supra,* 14 Cal.3d 199 at pp. 276-277; *State of California* ex rel. *Dept. of Employment* v. *General Ins. Co.* (1970) 13 Cal.App.3d 853, 858 [96 Cal.Rptr. 744].)

If the City is categorically excluded as a "person," it and its citizens may not avail themselves of the assistance of a county sealer as provided in section 12209.5 and subdivision (b) of section 12210 (both as quoted above). We are not persuaded that the Legislature intended this result, which would disserve the public interest. It follows that the Legislature intended to include governmental agencies—the City included—within the definition of "person" for purposes of division 5.

■ This does not mean that a "mandatory duty" is imposed upon the City by the language of subdivision (b) of section 12210, as appellant alleged or suggested in his complaint. (See the text at fn. 1, *ante.*) That language imposes a mandatory duty only upon the county sealer, who, if directed by his board of supervisors, "shall" test and certify "noncommercial . . . measuring devices . . . upon the written request of any person

. . . ." It imposes no duty upon a "person" who may, but obviously need not, request the sealer's assistance.

We have seen that the City's purpose in maintaining parking meters is to regulate vehicular traffic on its streets. (*Mervynne* v. *Acker, supra,* 189 Cal.App.2d 558 at p. 561; cf. *Bragg* v. *City of Auburn, supra,* 253 Cal.App.2d 50 at pp. 51-54.) There is nothing "commercial" about this municipal function. The term "commercial" imports "commerce, trade, business, industry or enterprise having financial profit as a primary aim" (*Dilley* v. *State Farm Mutual Automobile Ins. Co.* (1967) 249 Cal.App.2d 385, 387 [57 Cal.Rptr. 195]), and does not apply to the governmental activities of a municipality. Contrary to the allegations in appellant's complaint (see fn. 1 and the accompanying text, *ante*), the maintenance of parking meters does not involve "commercial purposes" because it "generates revenues" which are intended to support it. Thus, although it is a "person" for purposes of division 5 at large, the City is not reached by any of the sections which refer to "measuring apparatus" (or "instruments" or "devices") which are "commercial" or used for "commercial purposes." (See §§ 12107 and 12501.1, quoted above. See also §§ 12020, 12500 [subd. (c)], 12500.5, 12501, 12504.) This means, specifically and among other things, that the City is not required to have its parking meters sealed before using them.[4] (See § 12501.1.)

We finally reach the regulations. The disorganized pattern of division 5 includes three separate sections which vest the director with rulemaking powers. One of them, previously quoted, authorizes him to adopt regulations which "establish tolerances and specifications for *commercial . . . measuring apparatus . . . .*" (§ 12107 [italics again added].) Another provides: "12027. The director may make such rules and regulations as are reasonably necessary for the purpose of carrying out the provisions of this division."

The third provides in pertinent part: "12212. The director shall adopt necessary regulations governing the *inspection frequency* of all *commercially* used . . . *measuring apparatus* in the state. [¶] The sealer of each

---

[4]We may reasonably conclude that the "timing device" in a parking meter is a "measuring instrument" (or "apparatus" or "device"), as those terms are indiscriminately used throughout division 5, because it "measures" the passage of time. If this is so, the City's parking meters are "noncommercial . . . measuring devices" which it is entitled to have the county sealer test and certify, at its request, if locally authorized. (See § 12210, subd. (b), quoted in the text. See also § 12503.)

county shall perform such inspections as may be required by the director. . . ." (Italics added.)

The contentions on appeal have required examination of a complicated array of regulations adopted by the director pursuant to one or another of these sections. They appear in the California Administrative Code (CAC) in articles 1, 1.5 and 22 of the subchapter previously cited. (See fn. 3, *ante.*) They defy citation or quotation because their contexts are confusing, their language is typically opaque, and their numerical symbols appear in multiple decimals: it will suffice to state that some of those appearing in articles 1.5 and 22 may reach and apply to the periodic inspection, or tolerances and specifications, of "parking meters" or their "timing devices."

However, the regulations in articles 1.5 and 22 are controlled by omnibus language in article 1. (See CAC §§ 3000, 3000.2.) In pertinent part, the controlling language reads:

"3000.1. Commercial and Law Enforcement Equipment. These specifications, tolerances, and other technical requirements apply as follows:

"(a) To *commercial* . . . measuring equipment . . . .

". . . . . . . . . . . . . . . . .

"(c) To . . . measuring equipment in official use *for the enforcement of law* . . . .

"(These requirements should be used as a guide by the weights and measures official when courtesy examinations are made, upon request, of noncommercial equipment.) . . ." (Italics added.)

The omnibus article 1 regulations cite, as the authority for their adoption, "Sections 12107 and 12212, Business and Professions Code." (See the annot. at CAC § 3000.) As we have seen, each of these sections authorizes the adoption of regulations relative to "commercial" measuring apparatus only (see §§ 12107 and 12212 [first sentence], both quoted above). As we have also seen, the City's parking meters are not involved in a "commercial" enterprise and may not be characterized as "commercial" in themselves. For these reasons, they may not be reached with the regulations authorized by section 12107 or the first sentence of section

12212. Those regulations therefore apply to "commercial" parking meters, and their coin-activated "timing devices," which are commonly used in "commercial" lots and garages where offstreet automobile parking is provided to the public on a business basis.

The stated application of CAC section 3000.1 to "equipment" used for the "enforcement of law" is not authorized by section 12107 or the first sentence of section 12212. The only authority for the regulation's application to that "equipment" is the *second* sentence of section 12212, which requires a sealer to "perform such inspections as may be required by the director." We may conclude that all of the regulations (in arts. 1, 1.5 and 22 alike) reach equipment used for the "enforcement of law" because this has been "required by the director." The final questions are whether and how the regulations reach the City's parking meters, which are used in the "enforcement of law."

The answer appears in the parenthesized sentence which concludes CAC section 3000.1, quoted above. The sentence indicates that the regulations apply "when courtesy examinations are made, upon request, of noncommercial equipment." The authority for "courtesy examinations" appears in subdivision (b) of section 12210, which explicitly refers to "*noncommercial . . .* measuring devices." (Italics added.) We have seen that the City is a "person" entitled to the benefits of section 12210, subdivision (b). It is therefore entitled to the "courtesy examinations" (of its parking meters) to which the last sentence of CAC section 3000.1 refers, and the various regulations apply when the sealers' courtesies are extended. For lack of any other authority in division 5, none of the various regulations apply to its parking meters otherwise.

For all of the foregoing reasons, appellant has not stated a cause of action for declaratory relief. For the same reasons, his complaint could not have been amended to state one. The modification ordered below is made pursuant to the procedure which properly applies in such cases. (*Haley* v. *L. A. County Flood Control Dist.* (1959) 172 Cal.App.2d 285, 293 [342 P.2d 476]; *Berkeley* v. *Alameda County Bd. of Supervisors* (1974) 40 Cal.App.3d 961, 974-975 [115 Cal.Rptr. 540].)

The judgment is modified by striking therefrom the words "that plaintiff take nothing against said defendant, City of Oakland" and inserting in lieu thereof "that the action is dismissed as to the first count of the complaint herein, and that judgment on the second count is

rendered in favor of defendant, City of Oakland, and against the plaintiff." Respondent City of Oakland shall recover costs on appeal.

Christian, J., and Ragan, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.