No. 56,925

Roberts Enterprises, Inc., *Appellee,* v. Secretary of Transportation, *Appellant.*

(699 P.2d 479)

Opinion filed May 10, 1985.

*David G. Tittsworth,* chief counsel, Kansas Department of Transportation, argued the cause and was on the briefs for appellant.

*William A. Larson,* of Gehrt & Roberts, Chartered, of Topeka, argued the cause and *Shelden Le Bron,* of the same firm, was on the brief for appellee.

The opinion of the court was delivered by

Miller, J.: This is an appeal by the Secretary of Transportation, defendant, from a final order of the District Court of Shawnee County holding the Kansas Highway Advertising Control Act of 1972, K.S.A. 68-2231 *et seq.,* unconstitutionally overbroad and facially invalid, and enjoining the Secretary from removing any billboards owned by the plaintiff. A direct appeal has been taken to this court as authorized by K.S.A. 1984 Supp. 60-2101(b).

The plaintiff, Roberts Enterprises, Inc., commenced this action by filing a petition for injunctive relief. The petition states that Roberts owns approximately 150 outdoor advertising signs located at various places throughout the state, all of which signs were erected before March 31, 1972. The petition alleges that the Secretary issued notices to Roberts to remove the signs, and the Secretary has threatened and is threatening to remove the signs if Roberts does not do so, pursuant to the Highway Advertising Control Act of 1972.

The district court entered a temporary order restraining the defendant from removing or threatening to remove any of the signs or billboards until the further order of the court. The Secretary then answered, admitting Roberts' ownership of a

large number of signs which were specifically described, and alleging that the signs were erected in violation of the Highway Advertising Control Act of 1968, and are subject to removal without compensation by the Secretary of Transportation, pursuant to K.S.A. 68-2240, because the signs were not lawfully in existence prior to March 31, 1972, the effective date of the 1972 act. The Secretary sought an order directing Roberts to remove the signs or authorizing the Secretary to do so at Roberts' expense.

Initially the trial court took up cross-motions for summary judgments with reference to three specific signs. It denied Roberts' motion and granted the Secretary's motion for summary judgment as to those signs. Later, the case came on before the court for determination of the issues involving the remaining signs. The parties submitted the matter on stipulated facts and briefs. The trial court upheld the Highway Advertising Control Act of 1968, but found that the Highway Advertising Control Act of 1972 was unconstitutionally overbroad and facially invalid, and it enjoined the Secretary from proceeding to remove or cause the removal of the signs under that act. From this order, the Secretary appeals.

We will first review some of the legislative background and then some of the provisions of the 1972 act. In 1965, Congress amended 23 U.S.C. § 131, providing that federal aid highway funds appropriated on or after January 1, 1968, could be reduced by 10% to any state which had not made provision for effective control of the erection and maintenance of outdoor advertising displays within 650 feet of the nearest edge of the right-of-way of interstate and primary system highways. This, as could be expected, provided the impetus for Kansas and other states to adopt highway advertising control acts. The 1968 Kansas Legislature adopted the Highway Advertising Control Act of 1968, L. 1968, ch. 346 (later, K.S.A. 1968 Supp. 68-2216 *et seq.*). That act prohibited the erection or maintenance of outdoor signs, with certain exceptions, within 660 feet of interstate or primary highways. Signs falling within the exceptions were permissible under strict standards and licensing provisions of the act. It also provided for the removal of nonconforming signs and made a violation of the act a misdemeanor. The 1968 act was repealed by the 1972 legislature, effective March 31, 1972.

The 1972 legislature enacted the current act, the Kansas Highway Advertising Control Act of 1972, which became effective on March 31, 1972. See L. 1972, ch. 251, now K.S.A. 68-2231 *et seq.* The current act contains many provisions similar to those of the 1968 act, but it does not impose criminal penalties. We will discuss some of the provisions of the 1972 act later in this opinion.

The stipulation of facts entered into by the parties indicates that twelve of the signs initially described by the Secretary have been removed or are otherwise no longer in issue. The size, description, name of the owner or advertiser, or the message displayed is corrected with reference to thirty signs. Additionally, there are approximately 110 other signs correctly described by the Secretary in his initial listing. The parties agree that the Kansas Highway Commission sought agreement with the United States Department of Transportation under the 1968 act, but agreement was not reached. Also, prior to March 31, 1972, no federal funds were appropriated or available to compensate persons whose signs were removed, and during that time no sign was removed, no compensation was paid, no licenses or permits were issued and no criminal actions were brought. The parties also agree that prior to the enactment of the 1968 act there was no Kansas statute regulating the placement of outdoor advertising billboards or signs.

Although the parties have not entered into a formal stipulation to that effect, it is apparent—at least for the purposes of summary judgment—that the signs remaining in issue were erected prior to March 31, 1972; that no permits were granted for the erection or maintenance of those signs; and that the signs were either erected after the effective date of the 1968 act, or were nonconforming signs under that act.

The trial court found that the 1968 act is not unconstitutionally vague and indefinite on its face and that there was no substantial merit to the plaintiff's argument that the 1968 act never became effective. The trial court upheld the 1968 act and, as no appeal has been taken from that determination, it becomes the law of the case.

The court then went on to examine the 1972 act, first determining what the court saw as the key issue of whether Roberts Enterprises has standing to assert the unconstitutionality of the

1972 act as it relates to noncommercial messages. The court found that Roberts does not have noncommercial speech interests which are affected by the statute. It found that the only sign of the plaintiff which it contended bore a noncommercial message was in fact a commercial sign designed to attract tourism business to Salina.

The trial court found that the plaintiff has no protected noncommercial speech interests which would allow it to avoid the third-party standing rule. That rule, correctly stated by the trial court, is that:

"[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *United States v. Raines*, 362 U.S. 17, 21, 4 L.Ed.2d 524, 80 S.Ct. 519 (1960).

This is also the rule in this state. In *Delight Wholesale Co. v. City of Overland Park*, 203 Kan. 99, 453 P.2d 82 (1969), we said in Syllabus ¶ 1:

"We adhere to the rule that the constitutionality of governmental action can only be challenged by a person directly affected and such challenge cannot be made by involving rights of others."

The district court, however, concluded that plaintiff fits within the overbreadth exception to the third-party standing rule developed in *Thornhill v. Alabama*, 310 U.S. 88, 84 L.Ed. 1093, 60 S.Ct. 736 (1940), and *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 37 L.Ed.2d 830, 93 S.Ct. 2908 (1973). This exception is recognized in *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 80 L.Ed.2d 772, 104 S.Ct. 2118 (1984):

"Subsequently, however, the Court did recognize an exception to this general rule [the third-party standing rule] for laws that are written so broadly that they may inhibit the constitutionally protected speech of third parties. This 'overbreadth' doctrine has its source in *Thornhill v. Alabama*, 310 U.S. 88 (1940). In that case the Court concluded that the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." 466 U.S. at 798.

The trial court found that Roberts had no noncommercial speech interests—those generally protected by the First Amendment—but, under the overbreadth exception, permitted Roberts to challenge the validity of the statute as overbroad. Roberts based its challenge on the First Amendment, maintain-

ing that challenge on behalf of other persons not before the court whose constitutionally protected speech or expression might be deterred or prohibited by the statute.

The key issue, as we see it, is whether the Kansas Highway Advertising Control Act of 1972 is designed to and does prohibit noncommercial speech and expression, that which is constitutionally protected by the First Amendment. If the statute is applicable only to commercial advertising and does not apply to noncommercial speech, then we need not determine the standing issue and some of the other issues raised.

We turn to the pertinent provisions of the act. K.S.A. 68-2231 sets forth the legislative policy behind the enactment. It reads:

"The legislature hereby finds and declares: (a) That outdoor advertising is a legitimate, commercial use of private property adjacent to streets, roads and highways, where such commercial use does not conflict with the lawfully designated use of surrounding property;

"(b) that the erection and maintenance of outdoor advertising billboards, signs, displays, and devices in areas adjacent to interstate highways and primary highways should be regulated in order to protect the public investment in such highways, to promote the recreational value of public travel, to preserve natural beauty and to promote the reasonable, orderly and effective display of outdoor advertising;

"(c) that outdoor advertising is an integral part of the business and marketing function, and an established segment of the national economy, and should be allowed to operate in business areas, or areas where other commercial use of land is not prohibited, so long as such operation is not in conflict with lawfully imposed restrictions on the use of such areas; and

"(d) that the regulatory standards set forth in K.S.A. 68-2234 are consistent with customary use in this state and will properly and adequately carry out each and all of the purposes of this act; and that more severe restrictions should be imposed only when necessary to protect the lawful objectives and purposes of the people of this state or of any community of people therein."

Subparagraph (a) speaks of outdoor advertising as "a legitimate, *commercial use* of private property." "Commercial use" is not defined in the act.

The term "commercial" imports commerce, trade, business, industry or enterprise having financial profit as a primary aim. *Siegel v. City of Oakland*, 79 Cal. App. 3d 351, 145 Cal.Rptr. 62 (1978). "Commercial use" implies a utilization in connection with or for the furtherance of a profit-making enterprise.

Subparagraph (c) provides that outdoor advertising "is an integral part of the business and marketing function, and an established segment of the national economy. . . ." This

reference to outdoor advertising as related to business and marketing, and as a segment of the national economy, indicates that the legislature intended "outdoor advertising" to be commercial advertising, that having to do with business, trade and industry. The language used does not reflect an intent to include the dissemination of political, societal, religious or doctrinal ideas.

K.S.A. 68-2232(p) defines "sign" or "outdoor advertising." The subsection reads:

"(p) " 'Sign' or 'outdoor advertising' means any outdoor sign, display, device, notice, bulletin, figure, painting, drawing, message, placard, poster, billboard or other thing which is designed, intended or used to advertise or inform, any part of the advertising or informative contents of which is located within an adjacent area, and is visible from any place on the main traveled way or any portion of an interstate or primary highway."

"Adjacent area" is defined in K.S.A. 68-2232 as an area within 660 feet of the nearest edge of the right-of-way on any interstate or primary highway. The signs attempted to be regulated in this act are those within that area. The signs are those intended or used to "advertise or inform." The word "inform" is sometimes synonymous with the word "advertise." Taken in its broadest sense, however, it means to furnish information, to tell, to communicate knowledge. In the context in which it is used, it could mean to furnish commercial knowledge, information about a service or product, or it could mean the communication of abstract, noncommercial ideas.

K.S.A. 68-2233 prohibits the regulation or maintenance of signs in the "adjacent area" with certain exceptions. All of the exceptions relate to commercial signs except those included in subparagraph (a) which include *"[d]irectional and other official signs,* including, but not limited to, signs pertaining to natural wonders or scenic or historical attractions, which are required or authorized by law *and which comply with regulations which shall be promulgated by the secretary of transportation. . . ."* (Emphasis supplied.) This section makes clear that directional and official signs must comply with regulations promulgated by the Secretary. Directional or other official signs which do *not* comply are prohibited, and do not fall within the exception.

The Secretary argued in the trial court that the statutes should be construed to apply only to signs bearing commercial advertising and in reliance thereon cited the case of *State ex rel. Dept.*

*of Transp. v. Pile,* 603 P.2d 337 (Okla. 1979). The Oklahoma statute construed in that case contained a definition of signs similar to that contained in K.S.A. 68-2232 (p), and included the words "advertise or inform." The Oklahoma Supreme Court, construing the statutory language, said:

"If the statutory definition of sign, outdoor advertising, or outdoor advertising device found in 69 O.S. § 1273(a) including '. . .., or [any] other thing, which is designed, intended or used to advertise or *inform* . . .' was held to cover non-commercial speech, that interpretation would raise, at least, serious doubts as to its constitutionality. The statute is easily susceptible to the interpretation that it does not cover non-commercial speech. This court is bound to accept an interpretation that avoids constitutional doubt as to the validity of the provision. *U. S. v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). The trial court has held the non-commercial speech not to be regulated by this statute, has avoided the spectre of unconstitutionality, and its decision is in all respects AFFIRMED." 603 P.2d at 343.

The trial court here discussed the Oklahoma case and the restrictions placed by the court on the Oklahoma statute, which is virtually identical in relevant terms to the Kansas law. The trial court said:

"First, the statutory language clearly covers non-commercial messages. The definition of sign covers those that are 'designed, intended or used to advertise or *inform* . . .' The word 'inform' implies non-commercial messages. Further, under the rule of statutory construction that each word in a statute is presumed to have independent meaning and not be redundant of other words, this court must assume that the word 'inform' in the phrase 'advertise or inform' means something beyond advertising—i.e., non-commercial messages in addition to advertising messages. Second, the statute prohibits all signs except those fitting within the specified exceptions, K.S.A. 68-2233, and some of the exceptions are for certain non-commercial messages. This court assumes that the legislature would not have created such exceptions if they were not needed—i.e., if the statute did not prohibit non-commercial messages generally, no exceptions would have been needed. The clear implication is that the statute does prohibit most non-commercial signs. The Oklahoma decision ignores the wording and implications of the statutory language out of a desire to uphold the statute. While statutes should be read to uphold their constitutionality if possible, their language should not be ignored completely in pursuit of this goal. Third, the Oklahoma decision was rendered prior to the *Metromedia* decision, which held that an ordinance with similar provisions was overbroad."

The trial court in effect found that the word "inform" must imply the dissemination of noncommercial messages, otherwise the statute would be redundant. We do not so read it. Both advertise and inform may readily relate to commercial subjects. The legislature may have wished to include not only those which were

clearly advertisements, but those commercial messages which simply gave information about available commercial products or services. "Inform" does not necessarily have a noncommercial connotation. With reference to the exceptions in K.S.A. 68-2233, the trial court concluded that the legislature would not have included signs bearing certain noncommercial messages if all such signs were not included within the reach of the statute. Section 2233, however, makes it clear that not all directional and official signs are excluded but only those which conform to the Secretary's regulations. It thus specifically *includes* directional and other official signs within the sweep of the statute and makes all such signs subject to the regulations promulgated by the Secretary. Further, the signs which are described in (a), while noncommercial, are not the type of noncommercial signs which disseminate ideas. They are not the type of informational signs which are entitled to First Amendment protection.

The third reason advanced by the trial court is that the opinion in *Pile* was issued prior to the announcement of the opinion of the United States Supreme Court in *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 69 L.Ed.2d 800, 101 S.Ct. 2882 (1981). While the city ordinance involved in that case bears some similarity to the Kansas Highway Advertising Control Act of 1972, there are two important differences between the fact situation in that case and in this. Metromedia, Inc., was the owner of a large number of billboards. These were used not only to post commercial messages, but also "to convey a broad range of noncommercial political and social messages." 453 U.S. at 496. Metromedia, unlike Roberts Enterprises, thus had standing in its own right to challenge the provisions of the ordinance on First Amendment grounds. Additionally, there was no restrictive interpretation of the legislation by the California courts. The First Amendment challenge was decided adversely to Metromedia in the state courts and formed the basis for United States Supreme Court review.

The duty of an appellate court, when considering a challenge to legislation, was concisely stated in *City of Baxter Springs v. Bryant,* 226 Kan. 383, 598 P.2d 1051 (1979):

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution." Syl. ¶ 1.

"In determining constitutionality, it is the court's duty to uphold a statute under

attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done." Syl. ¶ 2."

"Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt." Syl. ¶ 3.

"The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute in the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which courts cannot interfere." Syl. ¶ 4.

In *Pile*, the Oklahoma Supreme Court said:

"This court is bound to accept an interpretation that avoids constitutional doubt as to the validity of the provision." 603 P.2d at 343.

Under the rules for interpretation of statutes stated in *Bryant* and many earlier cases, we are also under that duty. It is our duty to uphold a statute if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, this court should adopt that construction. *Lakeside Village Improvement Dist. v. Jefferson County*, 237 Kan. 106, 697 P.2d 1286 (1985).

For the reasons stated earlier in this opinion, we hold that the Kansas Highway Advertising Control Act of 1972, K.S.A. 68-2231 *et seq.*, as amended, does not regulate noncommercial speech and noncommercial signs. Roberts does not contend that the act is unconstitutional as applied to commercial speech and advertising, and we find no constitutional infirmities in the act in that regard. As we now construe it, we hold that the act does not conflict with the First Amendment to the Constitution of the United States, and that the act is constitutional.

The judgment of the district court is reversed and the case is remanded to that court for further proceedings in conformity with this opinion.