801 P.2d 445

**J. Elliot HIBBS, Director, Arizona Department of Revenue, Plaintiff–Appellant, Cross Appellee,**

**v.**

**CALCOT, LTD., a California corporation, Defendant–Appellee, Cross Appellant.**

**No. 1 CA–CV 88–453.**

Court of Appeals of Arizona, Division 1, Department T.

May 22, 1990.

Reconsideration Denied July 9, 1990.

Review Denied Dec. 18, 1990.*

---

* Cameron, J., of the Supreme Court, voted to grant review.

Robert K. Corbin, Atty. Gen. by James D. Winter and J.W. Ranby, Asst. Attys. Gen., Phoenix, for plaintiff-appellant, cross appellee.

Fennemore Craig, P.C. by Paul J. Mooney, Jim L. Wright, Phoenix, for defendant-appellee, cross appellant.

## OPINION

FIDEL, Judge.

This appeal concerns the 1986 tax classification of certain real and personal property used by the taxpayer, Calcot, Ltd., to warehouse baled cotton. The Arizona Department of Revenue contends that the property should be designated as class three commercial or industrial property. Calcot claims that it should be given the lower classification of class four agricultural property.[1] The Department appeals from summary judgment in the taxpayer's favor on this question and from the trial court's denial of its motion for new trial. Calcot cross-appeals, claiming that the Department's action is barred by collateral estoppel and that the trial court should accordingly have granted its motion to dismiss.

We conclude that the Department's action is not barred by collateral estoppel, and we uphold the Department's contention that the property should be given a class three commercial classification. This classification, we hold, is determined by the commercial usage of the property rather than the nonprofit status of its owner.

## BACKGROUND AND PROCEDURE

### 1. *Calcot's Structure and Property*

Calcot owns an 80–acre parcel of real property near the intersection of 51st Avenue and Camelback Road in Glendale, Arizona. The property is currently occupied by 41 buildings, a compress, black-topped areas, and a fence. Its zoning classification is heavy industrial. Calcot uses the property to store, humidify, compress, and rebale members' cotton for shipment, a use unchanged since 1956. To be marketable, cotton must have a certain moisture content. Calcot humidifies the cotton during storage to bring it to an acceptable moisture level and maintains it at this level while awaiting an acceptable market price. Calcot also compresses cotton bales to high density and smaller size for shipping, and it rebales bales that come apart.

Calcot is a non-profit cooperative association incorporated under California law. Its articles of incorporation state that it was formed to foster cooperative marketing of cotton products and by-products "and to eliminate speculative waste, and to stabilize

---

1. The classification of property determines the calculation of its assessed valuation. A.R.S. § 42–227(A). Class four property is assessed at sixteen percent of its full cash value. Class three property is assessed at twenty-five percent of its full cash value. A.R.S. § 42–227(A)(3), (4). The classification assigned to a particular parcel has significant taxation consequences to its owner, because the amount of the owner's tax is determined by applying the tax rate against the property's assessed valuation. *Hibbs v. Chandler Ginning Co.,* 164 Ariz. 11, 12 n. 1, 790 P.2d 297, 298 n. 1 (Ct.App., 1990).

the marketing of such products." Any individual, firm, partnership, corporation, or association that produces cotton products or by-products is eligible for Calcot membership. A member must agree to market products through Calcot's facilities. According to its articles, Calcot "shall at all times be operated on a non-profit cooperative basis for the benefit of its members ... [and shall] pay to members on a patronage basis all amounts over and above the specified operating expenses of the Association...." Thus, Calcot allocates all profit to its members.

## 2. *The Course of Administrative and Trial Court Proceedings*

This case concerns the classification of Calcot's property for the year 1986. The Maricopa County Assessor, and later the County Board of Equalization, designated Calcot's property as class four.[2] The Department appealed to the State Board of Tax Appeals, seeking designation as class three. When the State Board found that the classification set by the County was correct, the Department commenced this action by filing a Notice of Property Tax Appeal pursuant to A.R.S. § 42–141(B)(7).

Calcot moved to dismiss, arguing that an identical 1984 decision by the State Board of Tax Appeals collaterally estopped the Department from relitigating Calcot's property classification. (In 1984, after unsuccessfully contesting Calcot's class four status before the State Board of Tax Appeals, the Department had permitted the Board's

decision to become final without appeal to the superior court.) Calcot also argued that A.R.S. § 42–176(F),[3] if interpreted to deprive decisions of the Board of Tax Appeals of such preclusive effect, would violate the constitutional separation of powers doctrine (Ariz. Const. art. III) and invade the supreme court's exclusive power "to make rules relative to all procedural matters in any court." Ariz. Const. art. VI, § 5(5).

The Honorable Jeffrey S. Cates denied the motion, stating:

> Giving effect to the plain language of the statute, this court concludes that the defense of collateral estoppel does not apply to the Board of Tax Appeals' decision for 1984. The effect of the Department of Revenue's failure to appeal the 1984 decision was only to make that decision final for that year.

The Department moved for summary judgment, contending that the undisputed facts proved Calcot's property to be commercial. Calcot filed a cross-motion for summary judgment, arguing that: (1) under *Yavapai v. Wilkinson*, 111 Ariz. 530, 534 P.2d 735 (1975), the Department was required to show a change in usage to obtain a change in the class four classification the Board of Tax Appeals adopted in 1984, and (2) because of the "non-profit nature of the property," Calcot's property could not be classified as commercial or industrial and therefore had to be classified as class four.[4]

---

**2.** At all times material to this litigation, A.R.S. § 42–136 (renumbered as § 42–162 by Laws 1985, ch. 366, §§ 11, 20) provided in pertinent part:

A. There are established the following classes of property for taxation:

  ....

3. Class three: All real and personal property devoted to any commercial or industrial use other than property included in class one, two, four, five (b), five (c), six or seven.

4. Class four:

  (a) all real property and the improvements to such property, if any, used for agricultural purposes, and all other real property and the improvements to such property, if any, not included in class one, two, three, five or six.

  (b) all personal property used for agricultural purposes, and all other personal

property not included in class one, two, three, five or six.

**3.** A.R.S. § 42–176(F) provides:

Any decision of the state board of tax appeals pertaining to the valuation or classification of property is final when an appeal has not been taken within the time prescribed by this section. No person may plead such a decision in any proceeding as a bar to the raising of any valuation or classification issue relating to any other year.

**4.** Calcot also argued that its property was class four property because it was "used for agricultural purposes" within A.R.S. § 42–162(A)(4)(a). Calcot has abandoned this contention on appeal.

In support of Calcot's contention that it was entitled to a class four designation because its property was private and non-profit, Calcot offered an unsworn listing of *"several hundred* non-profit entities which, because of their private, non-profit nature are classified as class four properties." (Emphasis in original.) The listing consisted of a continuous column of Maricopa County tax parcel numbers grouped according to "nature of use." The listed use categories were "credit union," "private club, lodge or union," and "cotton gin."

Judge Cates denied Calcot's motion for summary judgment and granted the Department's, concluding "that defendant's property is used for commercial purposes and, therefore, is incorrectly classified as Class Four." The case was thereafter transferred from Judge Cates to the Honorable Norman D. Hall, Jr., who entered formal judgment for the Department in accordance with Judge Cates' ruling.

Calcot timely moved for a new trial, reiterating arguments it had made before. With its motion, Calcot submitted an affidavit of Carroll H. Belt, a former manager of the Commercial Property Division of the Maricopa County Assessor's Office. Attached to Belt's affidavit was a long listing of Maricopa County tax parcel numbers similar to the listing Calcot had submitted in support of its cross-motion for summary judgment. In addition to "credit union," "private club, lodge or union," and "cotton gin," the use groupings now included "non-exempt church-owned property and other public service properties" and "golf courses." Belt's affidavit stated in pertinent part:

I am familiar with the classification of various types of property pursuant to A.R.S. § 42–162 and guidelines implementing that statute.

3. The parcel numbers listed on the attached Exhibit A represent properties owned and/or operated by non-profit entities, including department stores, cooperatives, private golf courses, credit unions, country clubs, private clubs and fraternal organizations, unions and public service organizations.

4. The properties listed on the attached Exhibit A have been placed in Legal Class Four pursuant to A.R.S. § 42–162 for tax year 1986 because of their non-profit status, consistent with the statute and applicable guidelines.

Judge Hall granted Calcot's motion for new trial and its cross-motion for summary judgment. He found:

1. The property owned by Calcot, Ltd. qualifies as a class 4 property under A.R.S. § 42–162(A)(4) since it is used for a private, non-profit purpose. Class 3 property includes only property devoted to commercial or industrial use while class 4 includes property used for agricultural purposes and all property *not* included in any other classification. Since Calcot's property is not commercial or industrial, it automatically falls within class 4.

2. Calcot is a non-profit organization and its property cannot be classified as commercial or industrial within the Department's guidelines since it does not have profit as a primary aim and is not engaged in manufacturing or production of goods or services.

3. In 1986, the Board of Tax Appeals classified Calcot's property as classification 4 based upon its then current use which was consistent with the Board's treatment of several hundred other private non-profit organizations. To treat Calcot otherwise would be discriminatory.

4. Prior to 1984, Calcot's property was classified as number 3 but this was changed to number 4 in 1984 by the State Board of Tax Appeals and Calcot received refunds of overpayment of taxes for the previous 4 years. No challenge was made by the Department of Revenue until 1986 since it did not challenge the change of classification in 1985. No change of use had occurred between the years 1984 and 1986.

5. The [Department] has failed to show a change of circumstances as is required in *Yavapai County v. Wilkinson,* 111 Ariz. 530, 534 P.2d 735 (1975).

6. Because of the previous FINDINGS this court is not deciding the question as to the constitutionality of A.R.S. § 42–176(F).

The trial court later awarded Calcot attorney's fees [5] and entered formal judgment in Calcot's favor. The Department's motion for new trial was denied, the parties' appeal and cross-appeal were timely filed, and we have jurisdiction pursuant to A.R.S. § 12–2101(B) and (F)(1). The Chief Judge of Division One has assigned this appeal to Department T as permitted by A.R.S. § 12–120.04(G).

## HORIZONTAL APPEALS

■ We first comment with disfavor on the practice followed in the trial court in this case. Arizona courts have stated on numerous occasions that one trial judge should not reconsider the decision of another in the absence of new circumstances. *See, e.g., Chanay v. Chittenden,* 115 Ariz. 32, 34, 563 P.2d 287, 289 (1977); *Union Rock & Materials Corp. v. Scottsdale Conference Center,* 139 Ariz. 268, 272, 678 P.2d 453, 457 (App.1983). The Belt affidavit was additional evidence in support of the theory rejected by Judge Cates. It was not, however, newly discovered or previously unavailable evidence, and did not justify reexamination by a second judge. We appreciate that the superior court in Maricopa County engages in departmental reassignments and calendar transfers from time to time. However, motions for new trial or reconsideration are ordinarily routed to the original judge where, as here, the original judge has merely been transferred to a new assignment on the same court. That practice should have been followed in this case. The contrary practice is wasteful of judicial resources and encourages "try again" motion practice when a new judge gets a case.

We proceed to the substantive issues of this appeal.

## CALCOT'S CROSS–APPEAL

### 1. *Collateral Estoppel*

We first take up the issues raised by Calcot's cross-appeal. Calcot argues that the trial court erred in refusing to dismiss the action because, under *Yavapai County v. Wilkinson,* 111 Ariz. 530, 534 P.2d 735, the Department was collaterally estopped from challenging the class four status established by the Board of Tax Appeals in 1984.

Our supreme court recently summarized the doctrines of *res judicata* and collateral estoppel:

> Under the doctrine of *res judicata,* a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); *Industrial Park Corp. v. U.S.I.F. Palo Verde Corp.,* 26 Ariz.App. 204, 206, 547 P.2d 56, 58 (1976). Collateral estoppel or issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment. *Industrial Park Corp. v. U.S.I.F. Palo Verde Corp., supra,* 26 Ariz.App. at 209, 547 P.2d at 61; *Moore Drug Co. v. Schaneman,* 10 Ariz.App. 587, 589, 461 P.2d 95, 97 (1969); Restatement (Second) of Judgments § 27.
>
> When an issue is properly raised by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated. Restatement (Second) of Judgments § 27 comment d.

*Chaney Building Co. v. City of Tucson,* 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). *Accord, Kordsiemon v. Christianson,* 153 Ariz. 217, 735 P.2d 827 (App.1986). This court noted the general applicability of the

---

**5.** The Department challenges the amount of attorneys' fees awarded, but our reversal of the summary judgment awarded Calcot makes it unnecessary for us to consider the amount of fees.

law of issue preclusion to administrative determinations in *Campbell v. Superior Court,* 18 Ariz.App. 287, 501 P.2d 463 (1972).

### 2. *The Wilkinson Decision and the Legislature's Response*

■ In *Yavapai County v. Wilkinson,* 111 Ariz. 530, 534 P.2d 735 (1975), the taxpayers' property had earlier been established as grazing land rather than commercial property in a contested proceeding before the State Board of Property Tax Appeals. The Arizona Supreme Court held that later inconsistent valuations were barred by collateral estoppel, absent the taxing authority's showing of a change in circumstances sufficient to warrant a subsequent change in classification. 111 Ariz. at 532, 534 P.2d at 737.[6]

The legislature responded to *Wilkinson* in Laws 1979, ch. 199, § 20, by adding a new subsection (D) to former A.R.S. § 42–146 [now A.R.S. § 42–176(F)]. It provides:

Any decision of the state board of tax appeals pertaining to the valuation or classification of property is final when an appeal has not been taken within the time prescribed by this section. No person may plead such a decision in any proceeding as a bar to the raising of any valuation or classification issue relating to any other year.

This statute overruled *Wilkinson.* Calcot argues the contrary; it urges us to construe A.R.S. § 42–176(F) as providing that final valuation and classification determinations of the Board of Tax Appeals can be relitigated in succeeding years, but only when the underlying facts change. We do not read the statute in this limiting way. As Judge Cates correctly found, the language of A.R.S. § 42–176(F) is plain and unambiguous, and it prevents using the Board of Tax Appeals' 1984 decision to collaterally estop relitigation of classification in this case.

6. We agree with Calcot that the court's opinion in *Yavapai County v. Wilkinson* refutes the Department's argument that the revision of its Agricultural Manual guidelines effective January 1, 1986, qualified as a "change in circum-

### 3. *Separation of Powers*

■ Calcot argues, however, that this interpretation of A.R.S. § 42–176(F) renders it unconstitutional as a violation of the separation of powers doctrine of Ariz. Const. art. III or an encroachment on the supreme court's exclusive "[p]ower to make rules relative to all procedural matters in any court" under Ariz. Const. art. VI, § 5(5). *See generally Arizona Podiatry Ass'n v. Director of Ins.,* 101 Ariz. 544, 422 P.2d 108 (1966) (The 1960 adoption of Ariz. Const. art. VI, § 5(5), vested rulemaking power exclusively in the Arizona Supreme Court.) Again we disagree.

The court in *Yavapai County v. Wilkinson* was not faced with a comparable statute, and, therefore, had no occasion to consider how such a statute would affect application of the doctrine of collateral estoppel. The court's ruling in *Wilkinson* was appropriate to the circumstances before it and congruent with the general principle later restated in *Restatement (Second) of Judgments* § 83(1) (1982):

Except as stated in Subsections (2), (3), and (4), a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.

In the contrasting situation presented by the instant case, however, it is equally appropriate to recognize the following exception stated by *Restatement (Second) of Judgments* § 83(4):

An adjudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy that:

(a) The determination of the tribunal adjudicating the issue is not to be accord-

stances" within the court's analysis. The opinion makes it clear that the "circumstances" the court referred to were those pertaining to the actual use and character of the land previously classified by the Board of Tax Appeals.

ed conclusive effect in subsequent proceedings; or

(b) The tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question.

*See generally MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958) (absent prior decision or statute to contrary, Arizona courts will follow Restatement of the Law whenever applicable).

A.R.S. § 42–176(F) plainly evidences a legislative policy of the kind described in *Restatement (Second) of Judgments* § 83(4). Subsection (F) provides explicitly that a classification determination by the State Board of Tax Appeals shall not be conclusive in proceedings concerning subsequent tax years. Implicit in the statute is the policy that, in later tax years, an administrative agency or court shall be free to determine the classification issue independently. We hold that A.R.S. § 42–176(F) does not abrogate or limit the doctrine of collateral estoppel. It merely triggers a recognized exception that renders the doctrine inapplicable in this case.

### 4. Burden of Proof

■ We next consider a fallback argument that Calcot bases on *Wilkinson:* Even if the collateral estoppel rationale of *Wilkinson* was eclipsed by § 42–176(F), Calcot argues, *Wilkinson* independently places a burden of proof on the taxing authority "to show a change of circumstances [in succeeding years] to warrant a subsequent change in classification." 111 Ariz. at 532, 534 P.2d at 737. The collateral estoppel and burden of proof issues are separate and distinct, according to Calcot, and the Department's failure to allege or prove a change in usage entitled Calcot to prevail.[7]

Again we disagree. The *Wilkinson* discussion of burden must be read in proper context. The court stated:

The doctrine of collateral estoppel can be appropriately applied to the determina-

tions of this board. In light of the foregoing, we hold that once the State Board of Property Tax Appeals makes a final determination of real property classification for taxation purposes, the burden in succeeding years is on the taxing authority to show a change in circumstances to warrant a subsequent change in classification. To hold otherwise would mean that a taxpayer could be harassed for a number of years in succession by unsuccessful attempts each year to change the classification.

111 Ariz. at 532, 534 P.2d at 737. The context demonstrates that the court did not place a burden of proof on taxing authorities to overcome a factual presumption. The court merely articulated a legal burden entailed by its conclusion that a final Board of Tax Appeals decision should be given collateral estoppel effect in succeeding years. We have held that A.R.S. § 42–176(F) eliminates this effect. We conclude that it eliminates the *Wilkinson* burden as well.

We conclude that Calcot's motion to dismiss was properly denied. We thus dispose of the issues raised by Calcot's cross-appeal and turn to the Department's arguments on appeal.

### THE DEPARTMENT'S APPEAL

### 1. Commercial Use

■ Judge Hall concluded that Calcot's property is not devoted to a commercial or industrial use within the meaning of A.R.S. § 42–162(A)(3) because Calcot is a non-profit organization that "does not have profit as a primary aim and is not engaged in manufacturing or production of goods or services." Judge Hall incorrectly interpreted the statute in our view by focusing on the fact that Calcot itself is not organized as a profit making entity. The determinative issue is rather whether Calcot's property is "devoted to any commercial . . .

---

7. Calcot makes this argument primarily in support of the trial court's grant of summary judgment. We address it in this section of the opinion, however, because it relates so closely to the immediately preceding discussion of collateral estoppel under *Wilkinson*.

use...." [8] A.R.S. § 42–162(A)(3). Calcot's Articles of Incorporation make it clear that Calcot is a non-profit organization that does not operate to generate financial gain for itself. The record also makes clear, however, that Calcot uses its warehouse property exclusively to maximize profit for its member-owners. Viewed another way, Calcot's member-owners jointly devote the property to their collective commercial use through the Calcot instrumentality. The titleholder, though a non-profit corporation, uses its property in a wholly commercial way. As the court aptly stated in *In re Wisconsin Coop. Milk Pool*, 119 F.2d 999 (7th Cir.1941), *cert. denied*, 314 U.S. 655, 62 S.Ct. 105, 86 L.Ed. 525 (1941):

> While [cooperative] associations are to be encouraged as instrumentalities looking to aid of their patrons, they are not eleemosynary or charitable organizations. Rather they represent merely a banding together of producers for their common financial advancement. The sole motive is pecuniary gain.

*Id.* at 1001–02. *Cf. O'Neil v. United Producers and Consumers Coop.*, 57 Ariz. 295, 113 P.2d 645 (1941) (cooperative's members joined it with objective of personal gain); *Tempe Life Care Village v. City of Tempe*, 148 Ariz. 264, 268, 714 P.2d 434, 438 (App.1985) (following *O'Neil*). *See generally Black's Law Dictionary* 302 (5th ed. 1979).

A hypothetical example will highlight this distinction. If the property in question were owned and operated by an agribusiness corporation large enough to put all of the property's capacity to use in marketing its own cotton and cotton by-products, the property would clearly be classified as class three commercial—not because the corporation was organized as a for-profit commercial entity, but rather because it used the property commercially for the storage and maintenance of baled cotton pending advantageous sale. Calcot, though organized as a non-profit entity, devotes its property to an identical commercial use, and this use determines the propriety of a class three commercial designation.

### 2. *Discrimination*

■ We next consider Judge Hall's conclusion that Calcot would be subjected to impermissibly discriminatory treatment vis a vis other non-profit organizations if its property were designated class three.[9] The trial court drew this conclusion after examining a list of several hundred class four properties "owned and/or operated by non-profit entities." According to the accompanying affidavit of Carroll H. Belt:

> The [listed] properties ... have been placed in Legal Class Four pursuant to A.R.S. § 42–162 for tax year 1986 *because of their nonprofit status*, consistent with the statute and applicable guidelines.

(Emphasis added.)

The Belt affidavit and property sampling were inadequate to support the trial court's finding of discrimination. First, Calcot made no effort to establish that its list fairly represented the classification of properties of non-profit entities in Maricopa County or throughout the state. Social science scholars inform us, "The critical aspect of a sample is that it be representative of the population from which it is drawn. A sample that is non-representative is called a biased sample." J. Monahan and L. Walker, *Social Science In Law*

---

8. The term "commercial" imports commerce, trade, business, industry or enterprise having financial profit as a primary aim. *Siegel v. City of Oakland*, 79 Cal.App.3d 351, 145 Cal. Rptr. 62 (1978). "Commercial use" implies a utilization in connection with or for the furtherance of a profit-making enterprise. *Roberts Enterprises, Inc. v. Secretary of Transportation*, 237 Kan. 276, 280, 699 P.2d 479, 483 (1985), *appeal dismissed*, 474 U.S. 915, 106 S.Ct. 240, 88 L.Ed.2d 250 (1985).

9. Art. IX, § 1 of the Arizona Constitution provides in part: "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only."

Art. II, § 13 of the Arizona Constitution provides: "No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

58 (1985). Calcot failed to disclose its selection criteria or to otherwise establish that its list was a random or unbiased sample. It was Calcot's burden as proponent of the evidence to do so:

> Whether estimates obtained by sampling are reliable—a prerequisite to their use in litigation—will depend upon the procedures employed in selecting the sample and in obtaining information from or about the sample. The proponent of such evidence has the burden of establishing conformity with generally recognized statistical standards, a task that will ordinarily involve expert testimony.

*Manual For Complex Litigation* § 21.484 (2d ed. 1985) (Supplement to C. Wright & A. Miller, *Federal Practice and Procedure* (1969—1985)).

A second flaw in the trial court's finding of discrimination arises from the text of the Belt affidavit. The affidavit states that the listed "properties ... have been placed in Legal Class Four ... because of their non-profit status." The word "their" in this statement grammatically refers to the properties, not the property owners. Thus, the affidavit fails to establish that the identified properties were granted class four status merely because they were owned by non-profit entities.

A further weakness in Calcot's evidence is its lack of specificity. Under the heading "Nature of Use," the table attached to Belt's affidavit lists "credit union," "private club, lodge or union," "non-exempt church-owned properties and other public service properties," "golf courses," and "cotton gin." Except for cotton gins, these categories of property are not typically used to produce financial profit or gain for anyone. As for cotton gins, the legislature has made clear that they are deemed to be property "used for agricultural purposes" regardless of the commercial nature of their operation. A.R.S. § 42–167(A), (K)(5); *Hibbs v. Chandler Ginning*, 164 Ariz. 11, 790 P.2d 297 (Ct.App., 1990). Belt's affidavit and the attached table do not demonstrate that any properties used similarly to Calcot's have been designated as class four. The evidence therefore fails to support Calcot's claim of discrimination.

We consider the contrasting affidavit submitted by the Department. According to Arthur Gough, an Appraisal Services Unit Supervisor, it was *not* departmental policy to classify the property of all non-profit entities as class four, regardless of use. To the contrary, Gough stated that when churches, fraternal organizations, clubs, and similar non-profit entities operate commercial enterprises such as restaurants, pro shops, and bingo parlors, the properties committed to such uses are designated as class three.

We believe for reasons already stated that the Belt affidavit and survey do not contradict this evidence. Yet even if the stated flaws are overlooked, Calcot's evidence at best suggests that the Department has been insufficiently thoroughgoing in enforcing a statutorily appropriate policy of classifying commercial properties according to their use. To establish unreasonable discrimination requires greater proof than this. In *United States v. Wilson*, 639 F.2d 500, 505 (9th Cir.1981), the court recognized that tax authorities must "practice some degree of selectivity in deploying their limited enforcement resources." Though that court addressed a question of selective tax prosecution, its comment applies equally to questions of classification enforcement. In this case, Calcot's evidence does not support an inference that the classification of its property was a product of intentional or arbitrary discrimination. *Hillock v. Bade*, 22 Ariz. App. 46, 53, 523 P.2d 97, 104 (1974), *aff'd*, 111 Ariz. 585, 535 P.2d 1302 (1975). No impermissible discrimination has been shown.

## CONCLUSION

We hold: (1) the Board of Tax Appeals' 1984 classification decision did not preclude relitigation of classification in 1986; (2) the Department was not required under *Yavapai County v. Wilkinson*, to demonstrate that Calcot's property use had changed after the Board's 1984 decision; (3) Calcot's property is "devoted to [a] commercial ...

use" and should properly be designated as class three under A.R.S. § 42–162(A)(3); and (4) the evidence does not support an inference that Calcot will suffer impermissible discrimination when its property is given the statutorily appropriate classification of class three.

The judgment of the trial court is reversed with directions to enter judgment for the Department.

JACOBSON, P.J., and GERBER, J., concur.